**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**TODD J. ,**

        **Plaintiff,**

                                **Civil Action 3:22-cv-324
                                Judge Walter H. Rice
                                Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF
SOCIAL SECURITY,**

        **Defendant.**

**<u>REPORT AND RECOMMENDATION</u>**

      Plaintiff, Todd J., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 9), Plaintiff's Reply (ECF No. 10), and the administrative record (ECF No. 7).  The Undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**

      Plaintiff protectively filed his application for benefits on July 23, 2021, alleging that he has been disabled since July 2, 2021, due to bilateral ankle tendinopathy, bilateral ankle ossification and sinus tarsi syndrome, chronic low back pain, residual degenerative disc disease L4-S1 post fusion, spondylosis, PTSD, a pain disorder, thoracic strain, tension headaches,

bilateral patellar tendinopathy, and remote Osgood Schlatters.  (R. at 181-87, 217.)  Plaintiff's application was denied initially in December 2021 and upon reconsideration in February 2022. (R. at 66-76, 77-86.)  Plaintiff sought a *de novo* hearing before an administrative law judge.  (R. at 103-41.)  Administrative law judge Kevin Barnes (the "ALJ") held a telephone hearing on June 23, 2022, at which Plaintiff, who was represented by counsel, appeared and testified.  (R. at 42-65.)  A vocational expert ("VE") also appeared and testified.  (*Id.*)  On August 22, 2022, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 14-41.)   The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-8.)  This matter is properly before this Court for review.

## II.    RELEVANT RECORD EVIDENCE

The Undersigned has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports and testimony as to his conditions and resulting limitations. Given the claimed errors raised by the Plaintiff, rather than summarizing that information here, the Undersigned will refer and cite to it as necessary in the discussion of the parties' arguments below.

## III.    ADMINISTRATIVE DECISION

On August 22, 2022, the ALJ issued his decision.  (R. at 14-41.)  The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31,

2026.  (R. at 19.)  At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff

has not engaged in substantial gainful activity since July 2, 2021, the alleged onset date.  (*Id.*)

The ALJ found that Plaintiff has the following severe impairments: bilateral ankle tendinopathy,

bilateral ankle ossification, bilateral ankle sinus tarsus syndrome, degenerative disc disease (L4-

S1) status post fusion with spondylosis, degenerative issues of the knee with bilateral patella

tendinopathy, radiculopathy in the neck, right ear hearing loss, sleep apnea, and obesity. (R. at

19-20.)  The ALJ further found that Plaintiff does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments

described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 24.)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity

("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in
> 20 CFR 404.1567(b) with lifting and carrying up to ten pounds frequently and
> twenty pounds occasionally. He is able to stand and/or walk for about two hours
> per eight-hour workday and sit for approximately six hours per eight-hour workday

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at
any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully
considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or
      equal the criteria of an impairment set forth in the Commissioner's Listing of
      Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can [Plaintiff]
      perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional
      capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

3

with normal breaks. He is limited to jobs where he is able to sit or stand alternatively for up to thirty minutes every hour. He is limited to jobs that can be performed while using a handheld assistive device such as a cane for ambulation. He is limited to no crawling or climbing of ladders, ropes, or scaffolds with occasional balancing, stooping, crouching, kneeling, and climbing of ramps and stairs. He should avoid hazardous machinery and unprotected heights.

(R. at 24.)

At step four of the sequential process, the ALJ determined that Plaintiff is unable to perform his past relevant work as a claims agent and a protective officer. (R. at 34.) At step five, relying on the VE's testimony, the ALJ concluded that Plaintiff can perform jobs that exist in significant numbers in the national economy, such as a routing clerk, mail clerk, and a production assembler. (R. at 35-36.) The ALJ therefore concluded that Plaintiff has not been disabled since July 2, 2021. (R. at 36.)

## IV.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

4

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices [Plaintiff] on the merits or deprives [Plaintiff] of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.    ANALYSIS

Plaintiff sets forth two statements of error.  First, he contends that the ALJ erred at Step Two by failing to find his mental health impairments to be severe and by failing to incorporate any mental health limitation into the RFC.  Further, he argues that the ALJ failed to properly evaluate the opinions of the state agency reviewing psychologists, Drs. David Dietz and Paul Tangeman, and the consultative psychological examiner, Dr. Brian Griffiths.  (ECF Nos. 8 and 10.)  The Court considers these issues in turn.

### A.    Step Two

Plaintiff contends that the ALJ erred because he did not find Plaintiff's mental

impairments, including PTSD and depression to be severe. The Undersigned disagrees.

For an impairment to be "severe," it must be expected to last more than 12 months and more than "minimally" affect a claimant's work ability. *See* 42 U.S.C. § 423(d)(1)(A); *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988) ("an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience").  In assessing the severity of a psychological impairment, an ALJ considers "four broad functional areas:" "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3). The degree of limitation is assessed using a five-point scale: "None, mild, moderate, marked, and extreme." § 404.1520(c)(4).  A "mild" limitation indicates that "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited." § 404, Subpt. P, App. 1 § 12.00F2b. A "mild" limitation equates with a "non-severe" limitation indicating no more than minimal effect on a claimant's work-related activities. § 404.1520(d). "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." § 404.1522. In formulating the RFC, the ALJ must consider both the severe and non-severe impairments. § 404.1545(a)(2).

According to Plaintiff, the ALJ "unreasonably found" that he had "no mental health impairment at all."  (ECF No. 8 at 5.)  This claim inaccurately portrays the ALJ's analysis.  The ALJ discussed Plaintiff's mental impairments, at great length, as follows:

> The claimant and his representative contended that his mental impairments, including his depression and posttraumatic stress disorder (PTSD) were "severe."

However, the claimant's mental impairments, considered singly and in combination, do not cause more than minimal limitations in the claimant's ability to perform basic mental work activities and are therefore non-severe. In making this finding, I have considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria. I find that the claimant has no limitation in understanding, remembering, or applying information; no more than a mild limitation in interacting with others; no more than a mild limitation in concentrating, persisting, or maintaining pace; and no more than a mild limitation in adapting or managing oneself.

These findings are supported by the record, which demonstrates relatively good mental functioning on examinations despite limited complaints and minimal, conservative treatment (Exhibits 1F-14F). The claimant alleged disability in part because of PTSD (Exhibit 1E/2). The claimant alleged that his pain makes it hard to concentrate and focus (Exhibit 4E/1). He indicated that he was generally able to pay attention for ten to fifteen minutes, though it could be less because pain caused him to lose focus, and it also caused irritability (Exhibit 4E/7). He indicated trouble getting along with others, though he tolerated them (Exhibit 4E/5). He stated he no longer had many friends and did not see family very often, and he only did things when he absolutely had to (Exhibit 4E/5). He did not like being in stressful situations, and he did not like change (Exhibit 4E/7). He noted that his medication made him very sleepy, which made it hard to read, and he sometimes did not remember what he was reading (Exhibit 4E/5). On his initial appeal, he stated his pain gets so bad that it caused stress resulting in hair loss and bald spots (Exhibit 6E/4). However, the record does not support mental impairments as intense, persistent, or limiting as alleged during the period under review, and he did not testify to significant mental difficulties at his hearing.

The record demonstrates that, by 2011, the claimant was diagnosed with PTSD, an adjustment disorder with anxiety, and anxiety NOS (not otherwise specified) (e.g. Exhibit 11F/25). July 2021 mental health triage notes show reports of depression, anxiety, and PTSD (Exhibit 2F/75). He noted stress, anxiety, and anger while working (Exhibit 2F/75). However, he declined a referral for services offered by the VA such as PC-MHI classes, therapy, or medication management (Exhibit 2F/75). At his November 2021 internal medicine consultative examination, speech was fluent, articulate, and coherent (Exhibit 3F/2-3). Memory for long and short-term events was not impaired (Exhibit 3F/3). Thought processes were rational, and there was no difficulty sustaining concentration (Exhibit 3F/3). Attention span was satisfactory (Exhibit 3F/3). In December 2021, the claimant participated in a psychological consultative examination (Exhibit 6F). He alluded to anxiety and

depression when asked of the nature of his disability (Exhibit 6F/2). He reported that he withdraws from others and did not participate in preferred activities because of physical limitations, which contributed to his depression (Exhibit 6F/3). He indicated he had poor sleep and a low energy level, and he was easily fatigued (Exhibit 6F/3). He stated attention and concentration decreased with pain (Exhibit 6F/3). He estimated that he might get a panic attack or two per month, and he noted trauma-related symptoms from exposure to combat, including intrusive thoughts, flashbacks, nightmares, avoidant behaviors, an exaggerated startle reflex, and hypervigilance (Exhibit 6F/4). He reported getting irritable and agitated with some angry outbursts, and he noted some racing thoughts (Exhibit 6F/3). He did not engage in impulsive or hedonistic behaviors or activities (Exhibit 6F/4). He stated he did not get manic or paranoid, and he did not have perceptual disturbances such as hallucinations (Exhibit 6F/4). He noted he did not get crying spells or suicidal thinking (Exhibit 6F/3). His appetite was adequate (Exhibit 6F/3). He stated he left his last job due to stress, and he had to take breaks so that he could go somewhere quiet to refocus (Exhibit 6F/3). He noted that he got along with supervisors, coworkers, and the public when working (Exhibit 6F/3). He stated that he has never been psychiatrically hospitalized (Exhibit 6F/3). He stated that he sometimes participated in counseling with a VA-affiliated behavioral specialist (Exhibit 6F/3). He did not take psychoactive medication (Exhibit 6F/3). The claimant arrived punctually to the examination with no difficulty locating the office (Exhibit 6F/4). The examiner noted that the claimant's mood was depressed, and his affect was somewhat constricted (Exhibit 6F/4). He was not tearful during the examination and did not express suicidal thinking (Exhibit 6F/4). He manifested no indications of anger or hostility (Exhibit 6F/4). He displayed no autonomic or motoric indications of anxiety (Exhibit 6F/4). He manifested no indications of obsessions, compulsions, excessive religiosity, paranoid ideations, delusions, or hallucinations (Exhibit 6F/4). His complaints of limited energy and easy fatigability might be suggestive of somatization (Exhibit 6F/4). Speech was neither pressured nor slowed, and he displayed no loose associations, flight of ideas, or delusional beliefs (Exhibit 6F/4). He was diagnosed with an unspecified depressive disorder and posttraumatic stress disorder (Exhibit 6F/5). However, his examination was generally unremarkable (Exhibit 6F). Furthermore, during the period under review, he received no mental health treatment beyond a triage appointment shortly after the alleged onset date (Exhibits 1F-14F). Thus, the record demonstrates that his mental impairments result in no more than mild limitations in the "paragraph B" criteria and will not significantly limit his ability to perform basic work-related activities.

With respect to his ability to understand, remember, or apply information, the claimant has no limitation. In September 2021, the claimant completed a function report, demonstrating an ability to read, write, and following instructions (Exhibit

4E). He noted that his medication made him very sleepy, which made it hard to read, and he sometimes did not remember what he was reading (Exhibit 4E/5). However, he noted that he was able to handle money, including paying bills and counting change (Exhibit 4E/4). He acknowledged that he was able to follow instructions, and he did not indicate trouble with understanding or memory (Exhibit 4E/6). At a physical therapy evaluation that month, he stated he was able to read as long as he wanted (Exhibit 2F/39). At his November 2021 internal medicine consultative examination, memory for long and short-term events was not impaired (Exhibit 3F/3). At his psychological consultative examination, the claimant arrived punctually with no difficulty locating the office (Exhibit 6F/4). The examiner noted that intelligence appeared average (Exhibit 6F/4). His remote recall was adequate, as he was able to provide personal historical information without difficulty (Exhibit 6F/5). He did not ask the examiner to repeat and/or clarify questions (Exhibit 6F/5). He understood and followed simple instructions during the evaluation (Exhibit 6F/6). On examination, the claimant was able to recall five, six, and seven digits forward, but not consistently (Exhibit 6F/5). He recalled five digits backward (Exhibit 6F/5). Digit span testing was considered within normal limits (Exhibit 6F/6). He remembered two of three objects after a five-minute delay (Exhibit 6F/5). He was able to perform eight correct iterations of serial 7s in thirty seconds (Exhibit 6F/5). He easily counted backward from twenty be threes (Exhibit 6F/5). He was able to correctly mentally calculate one of two math problems (Exhibit 6F/5). He was able to interpret proverbs, identify similarities between two objects, and answer fund of knowledge questions (Exhibit 6F/5). Accordingly, the claimant has no limitation with respect to understanding, remembering, or applying information.

The claimant's limitation in interacting with others is no more than mild. The claimant alleged that his pain caused some irritability (e.g. Exhibit 4E/7). He indicated trouble getting along with others, though he tolerated them (Exhibit 4E/5). He stated he no longer had many friends or saw family very often (Exhibit 4E/5). However, in his function report, he noted that he was able to go shopping in stores, and he was able to go out alone (Exhibit 4E/4). He spent time with others in person, on the phone, and via texting (Exhibit 4E/5). He mainly spent time with his daughter and girlfriend, and he took his daughter shopping for clothes (Exhibit 4E/5). He attended his daughter's sporting events, which occurred one to two times per week during the season (Exhibit 4E/5). He got along with authority figures well, and he has never been fired from a job because of trouble getting along with others (Exhibit 4E/6). The Social Security employee assisting with his teleclaim noted he was pleasant and cooperative (Exhibit 2E/2). At his psychological consultative examination, he noted that he got along with supervisors, coworkers, and the public when working (Exhibit 6F/3). The examiner noted that he was a polite and cooperative individual (Exhibit 6F/4). He interacted appropriately with the examiner (Exhibit 6F/6). His receptive language skills were adequate (Exhibit

6F/4). Therefore, the claimant has no more than a mild limitation in his ability to interact with others.

Regarding his ability to concentrate, persist, and maintain pace, the claimant has no more than a mild limitation. The claimant alleged some difficulty with focus and concentration due to his pain (e.g. Exhibit 4E/1). He suggested he was only able to pay attention for ten to fifteen minutes (Exhibit 4E/7). However, he was able to prepare meals for up to an hour and attend to chores, including cleaning, laundry, and mowing the lawn (Exhibit 4E/3). He was able to drive (Exhibit 4E/4). He was able to handle money, including paying bills and counting change (Exhibit 4E/4). He spent some time reading (Exhibit 4E/5). At a physical therapy evaluation that month, he stated that he was able to drive and read as long as he wanted (Exhibit 2F/39). At his internal medicine consultative examination, there was no difficulty sustaining concentration (Exhibit 3F/3). Attention span was satisfactory (Exhibit 3F/3). At his psychological consultative examination, he stated that he had to take breaks so that he could go somewhere quiet to refocus (Exhibit 6F/3). The claimant arrived punctually with no difficulty locating the office (Exhibit 6F/4). The examiner noted that he did not ask the examiner to repeat and/or clarify questions (Exhibit 6F/5). He was able to follow the conversation during the interview (Exhibit 6F/6). He worked at an adequate rate during the examination (Exhibit 6F/6). On examination, the claimant was able to concentrate enough to recall five, six, and seven digits forward, but not consistently (Exhibit 6F/5). He had sufficient concentration to recall five digits backward (Exhibit 6F/5).  Digit span testing was considered within normal limits (Exhibit 6F/6). He was able to concentrate enough to remember two of three objects after a five-minute delay (Exhibit 6F/5). He had sufficient concentration to be able to perform eight correct iterations of serial 7s in thirty seconds (Exhibit 6F/5). He was able to concentrate enough to easily count backward from twenty be threes (Exhibit 6F/5). He had sufficient concentration to be able to correctly mentally calculate one of two math problems (Exhibit 6F/5). Thus, the claimant has no more than a mild limitation with respect to concentrating, persisting, or maintaining pace.

The claimant has no more than a mild limitation in his ability to adapt or manage oneself.  The claimant alleged that he did not like being in stressful situations, and he did not like change (e.g. Exhibit 4E/7). He stated his pain gets so bad that it caused stress resulting in hair loss and bald spots (e.g. Exhibit 6E/4). However, in his function report, he noted that he helped care for his ten-year-old daughter, including making her dinner and helping her with schoolwork (Exhibit 4E/2). He had no problems attending to his personal care, and he did not need reminders to attend to personal needs and grooming or to take medication (Exhibit 4E/2-3). He was able to prepare meals for up to an hour (Exhibit 4E/3). Chores included cleaning, attending to laundry, and mowing the lawn (Exhibit 4E/3). He was able

to drive and go out alone (Exhibit 4E/4). At his psychological consultative examination, he stated he left his last job due to stress, and he had to take breaks so that he could go somewhere quiet to refocus (Exhibit 6F/3). The examiner noted he was dressed appropriately, and he was clean and neat in appearance (Exhibit 6F/4). No information suggested that the claimant cannot be managed in the community (Exhibit 6F/5). His judgment appeared to be sufficient for him to make decisions affecting his future and to conduct his own living arrangements efficiently (Exhibit 6F/5). He was able to interpret proverbs and identify similarities between two objects (Exhibit 6F/5). As such, the claimant has no more than a mild limitation in this domain of functioning.

Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is nonsevere (20 CFR 404.1520a(d)(1)).

(R. at 20-22.)

This discussion demonstrates that the ALJ considered Plaintiff's alleged mental impairments in significant detail and found that there was no evidence that these impairments imposed more than minimal functional limitations on Plaintiff's ability to perform work related activity. As this excerpt further confirms, the ALJ's decision is substantially supported in large part by both Plaintiff's Function Report (R. at 234-241) and the report from Plaintiff's psychological consultative examination with Dr. Griffiths (R. at 436-442).

In the face of this, in an effort to demonstrate the ALJ's alleged unreasonableness, Plaintiff cites the Veterans' Administration finding that Plaintiff was fifty percent disabled as a result of his PTSD. (ECF No. 8 at 5-6.) As noted above, Plaintiff filed his application for Disability Insurance Benefits in 2021. (R.at 17, 181-187.) The regulations governing his claim state that for "claims filed on or after March 27, 2017, we will not provide any analysis in our

determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 404.1504 (emphasis added). The regulations explain that the reason for this is that "Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs . . . — make disability . . . and other benefits decisions for their own programs using their own rules." *Id.* The regulations further provide that "[b]ecause a decision by any other governmental agency or a nongovernmental entity about whether you are disabled . . . or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled . . . under our rules." *Id.* "VA Disability Ratings are diagnosis-driven and not based on an evaluation of remaining functional capacity as is required under the Social Security Regulations. Thus, they do not contain function-by-function limitations." *Boggs v. Comm'r of Soc. Sec.,* No. 2:20-CV-6135, 2021 WL 4771267, at *7 (S.D. Ohio Oct. 13, 2021). The ALJ recognized as much in concluding that "any opinion intended by the VA's disability rating is minimally persuasive." (R. at 34.)

Beyond this, Plaintiff asserts that the ALJ's decision contradicts the opinions of Drs. Dietz and Tangeman, state agency psychologists who found his Depressive, Bipolar and Related Disorders and his Trauma-and Stressor-Related Disorders to be severe. (ECF No. 8 at 6.) As set forth in more detail below, however, the ALJ reconciled these opinions with other record evidence, specifically finding that Plaintiff's "generally unremarkable functioning on mental status examinations and relatively adequate activities of daily living despite minimal treatment is indicative of better mental functioning than opined." (R. at 33.) The final point Plaintiff offers

on this issue is Dr. Griffiths' diagnosis of Unspecified Depressive Disorder and PTSD. (ECF No. 8 at 6.) However, "[t]he mere diagnosis of [an impairment] … says nothing about the severity of the condition." *Boggs v. Comm'r of Soc. Sec.,* No. 2:20-CV-6135, 2021 WL 4771267, at *7 (S.D. Ohio Oct. 13, 2021).

Moreover, as Plaintiff recognizes, even if the ALJ had erred, errors at Step 2 of the sequential analysis do not necessarily require reversal if the ALJ finds at least one impairment to be severe and proceeds with the remaining steps of the sequential process. Here, the ALJ found that Plaintiff suffered from many severe impairments, including bilateral ankle tendinopathy, bilateral ankle ossification, bilateral ankle sinus tarsus syndrome, degenerative disc disease (L4-S1) status post fusion with spondylosis, degenerative issues of the knee with bilateral patella tendinopathy, radiculopathy in the neck, right ear hearing loss, sleep apnea, and obesity. (R. at 20.) Where an ALJ determines that one or more impairments is severe at step two and proceeds with the sequential process, the ALJ's failure to find additional severe impairments at step two does not constitute reversible error. *See Maziarz v. Secretary of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987) (failure of Secretary to find that an impairment was severe was not reversible error because he found that claimant had other severe impairments); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."). Plaintiff attempts to distinguish this case from the holding in *Maziarz* by making two arguments. Neither is persuasive.

13

First, Plaintiff contends that the RFC must account for the combined effects of all of his limitations. Thus, in Plaintiff's view, the ALJ's failure to include any psychological limitation in the RFC constitutes error. Although the regulations require the ALJ to "consider" the possible effect of a non-severe impairment on the claimant's capacity for work as the ALJ did here, there is no accompanying requirement that the RFC must then include restrictions reflecting a non-severe condition in the RFC. *Caudill v. Comm'r of Soc. Sec.*, No. 2:16-cv-818, 2017 WL 3587217 at *6 (S.D. Ohio Aug. 21, 2017) ("Contrary to Plaintiff's apparent contention, the ALJ's determination that she had some mild impairment does not require inclusion of mental limitations into the RFC.") Indeed, "[c]ourts in this circuit have routinely rejected the same argument now advanced by Plaintiff." *Chidsey v. Kijakazi*, No. 1:20-CV-01858, 2022 WL 4599195, at *8–9 (N.D. Ohio Sept. 30, 2022) (citing cases); *see also Plotkowski v. Comm'r of Soc. Sec.,* No. 2:20-CV-12011, 2022 WL 413371, at *6–7 (E.D. Mich. Jan. 18, 2022), *report and recommendation adopted sub nom. Plotkowski v. Saul*, No. 20-CV-12011, 2022 WL 407079 (E.D. Mich. Feb. 9, 2022) (citing additional cases).

Finally, Plaintiff relies on *Richardson v. Saul,* 511 F. Supp. 3d 791 (E.D. Ky. 2021) to insist that "remand must occur." (ECF No. 8 at 8.) That case has no bearing here. There, the ALJ found no more than mild limitations at Step Two and incorporated that finding into the RFC discussion. However, the ALJ also gave great weight to an opinion that found more restrictive, "mild to moderate" mental limitations. *Id.* at 799-800. Because the ALJ omitted all mental limitations from the RFC formulation and did not address the inconsistency, the reviewing court could not determine the impact of plaintiff's mild to moderate limitations on the ability to

14

perform work activity.  That is not the situation here.  Rather, in this case, the ALJ considered

the various opinions and explained his basis for reaching his conclusions.  The ALJ also noted

Plaintiff's lack of mental health treatment, aside from a triage appointment shortly after his

alleged onset date, during the relevant review period (R. at 21) and Plaintiff's failure to testify to

significant mental difficulties at his hearing (R. at 20).  The ALJ also detailed Plaintiff's

activities of daily living as reported by Plaintiff in his Function Report.  (R. at 31 citing R. at

234-241.)  Thus, as discussed, the ALJ's conclusions provided no reasonable basis for inclusion

of mental limitations in the RFC.  Moreover, the ALJ specifically explained that he did not

include any mental limitations in the RFC because he found that Plaintiff's impairments caused

no more than mild impairments.  (R. at 23.)  Further, that the ALJ may have integrated his Step

Two and Step Four findings is not, on its own, cause for remand.  *Chidsey,* 2022 WL 4599195, at

*9.  Accordingly, neither aspect of Plaintiff's first claimed error has merit.

      **B.**      **The ALJ's Evaluation of the Mental Health Assessments**

     Plaintiff next argues that the ALJ erred in his evaluation of the medical source opinions

in two specific ways.  First, Plaintiff contends, with respect to the opinions of Drs. Dietz and

Tangeman, the state agency non-examining psychologists, that the ALJ considered only the

consistency factor and failed to evaluate these opinions for supportability.  Further, Plaintiff

asserts that the ALJ purportedly found the administrative medical findings of Drs. Dietz and

Tangeman "somewhat persuasive" and the opinion of consultative psychological examiner Dr.

Griffiths "mostly persuasive," but failed to adopt those findings "or clearly explain which limitations

were persuasive and which were not persuasive."  (ECF No. 8 at 16.)  Relatedly, Plaintiff argues

that the ALJ erred in failing to find that superficial interaction is a well-recognized work-related limitation.  The Undersigned will address these issues in turn.

Because Plaintiff filed his application after March 27, 2017, it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed.  20 C.F.R. §§ 404.1513(a), 404.1520c (2017).  A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] imitations." 20 C.F.R. § 404.1545(a)(1) (2012).   A claimant's RFC must be based on all the relevant evidence in a claimant's case file.  (*Id.*)  The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5).

Regarding two of these categories—medical opinions and prior administrative findings— an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a).  Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1)  [s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)–(5). Although there are five factors, supportability and consistency are key, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2). And

although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. (*Id.*) If, however, an ALJ "find[s] that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ will] articulate how [he or she] considered the other most persuasive factors. . . ." 20 C.F.R. § 404.1520c(b)(3).

The Undersigned turns first to Plaintiff's claim that the ALJ erred by failing to consider the supportability factor when discussing the opinions of the state agency psychological consultants, Drs. Dietz and Tangeman. The starting point for analysis is the ALJ's discussion of those opinions. The ALJ had this to say about the assessments provided by Drs. Dietz and Tangeman:

> The opinions of Drs. Dietz and Tangeman, non-examining psychologists with the DDD, are somewhat persuasive. (Exhibits 1A and 3A0. Drs. Dietz and Tangeman opined [Plaintiff] had no limitation in understanding, remembering, or applying information, a mild limitation in concentrating, persisting, or maintaining pace, and moderate limitations in interacting with others and adapting or managing oneself (Exhibits 1A and 3A). They opined he was able to interact with coworkers, supervisors, and the general public on a superficial basis (Exhibits 1A and 3A). They further opined that he was able to handle infrequent changes in his day-to-day routine that can be readily explained (Exhibits 1A and 3A). The opinions of Drs. Dietz and Tangeman are somewhat supported by and consistent with the record, which reflects limited psychological complaints, minimal treatment, and relatively good functioning on mental status examinations (Exhibits 1F-14F). His subjective complaints and relatively good functioning on examinations demonstrated an ability to perform work activity within the limitations opined (Exhibits 1F-14F). However, his generally unremarkable functioning on mental status examinations and relatively adequate activities of daily living despite minimal treatment is indicative of better mental functioning than opined (Exhibits 4E, 1F-14F). I further note that Drs. Dietz and Tangeman used language that is vague and not vocationally defined (Exhibits 1A and 3A).

(R. at 32-33.)

17

An ALJ's obligation in discussing the "supportability" factor when evaluating an opinion of a reviewing physician, who by nature, forms an opinion after reviewing the medical evidence, is a matter of current debate. *See, e.g. Elaine S. v. Comm'r of Soc. Sec.,* No. 3:22-CV-240, 2023 WL 2623575, at *4 (S.D. Ohio Mar. 24, 2023), *report and recommendation adopted in part, rejected in part sub nom. Elaine S. v. Commissioner of the Social Security Administration*, No. 3:22-CV-240, 2023 WL 6290070 (S.D. Ohio Sept. 27, 2023). Regardless, even assuming the ALJ committed an articulation error with respect to the supportability factor, it is possible that such an error was harmless. *Id.*

An ALJ's errors are nearly always subject to harmless error analysis. Courts "will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *See Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). And, a Plaintiff has the burden to show that any error was not harmless. *Hague v. Comm'r of Soc. Sec.*, No. 2:18-cv-419, 2019 WL 4071718, at *3 (S.D. Ohio August 28, 2019). Plaintiff has not satisfied that burden here. Indeed, Plaintiff points to no evidence demonstrating that the ALJ's assessment that the record demonstrated better mental functioning than Drs. Dietz and Tangeman opined was incorrect. Absent such evidence, Plaintiff has not shown that the ALJ's errors prejudiced him on the merits or denied him a substantial right. *See Rabbers*, 582 F.3d at 648 (finding ALJ's error harmless); *see also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006) (citing *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir.1989) ("[N]o principle of administrative law or common

18

sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.")).

Instead, Plaintiff offers the argument noted above regarding the ALJ's failure to either adopt the psychologists' findings or clearly explain which of their opined limitations were persuasive and which were not persuasive. (ECF No. 8 at 16.) This argument, however, also is without merit.

First, Drs. Dietz and Tangeman opined that Plaintiff had no limitation in understanding, remembering or applying information. (R. at 66-75; 77-85.) Similarly, Dr. Griffiths failed to indicate a limitation in that functional area. (R. at 441.) The ALJ agreed, finding no limitation in this area. (R. at 21-22.) Drs. Dietz and Tangeman further opined that Plaintiff had a mild limitation in concentrating, persisting, or maintaining pace. (R. at 66-75; 77-85.) The ALJ again essentially agreed, concluding that Plaintiff's limitation in this functional area was no more than mild. (R. at 22-23.) Drs. Dietz and Tangeman opined that Plaintiff had moderate limitations in interacting with others and adapting and managing oneself. (R. at 66-75; 77-85.) In his discussion of the "paragraph B" criteria, the ALJ found that Plaintiff's limitations in these two functional areas were no more than mild. (R. at 22-23.) The ALJ explained his reasons for departing from these reviewing physicians' opinions, including Plaintiff's "unremarkable functioning on mental status examinations and relatively adequate activities of daily living despite minimal treatment." (R. at 33.) As discussed above, the ALJ's conclusions are supported by substantial evidence and provide no basis for remand.

19

With respect to the ALJ's evaluation of Dr. Griffiths' remaining opinions, as the ALJ noted, Dr. Griffiths framed his opinions by way of a narrative discussion. (R. at 33 citing 436-442.) The ALJ construed this discussion as consistent with a finding of no more than mild limitations in the functional areas of concentrating, persisting, or maintaining pace; interacting with others; and adapting and managing oneself. (R. at 33.) Thus, the ALJ's conclusions of no more than mild limitations in these functional areas paralleled Dr. Griffiths' findings. In short, the ALJ either essentially adopted the assessments of the reviewing and consultative psychologists regarding Plaintiff's levels of limitation across the four broad functional categories or explained his reasons for departure. Under this circumstance, the Undersigned finds no error supporting remand.

Finally, Plaintiff's claimed error regarding the ALJ's characterization of the term "superficial" as vague and not vocationally defined fares no better. To be clear, the ALJ did not reject the term "superficial" in favor of the word "occasional" or any other word he deemed to be more vocationally relevant. Rather, as discussed above, the ALJ declined to include any social interaction limitations and his reasons for doing so are supported by substantial evidence. As a result, and as a fair reading of the ALJ's discussion confirms, any characterization of the term "superficial" was not the primary basis for his decision not to include any limitation as to Plaintiff's social interaction.[2] For these reasons, the Undersigned finds no error requiring remand.

---

[2]The Undersigned notes that, in making this argument, Plaintiff relies, in part, on *Lindsey v. Comm'r of Soc. Sec.*, No. 2:18-cv-18-EAS-CMV, 2018 WL 6257432 (S.D. Ohio Nov. 30, 2018), adopted 2019 WL 133177 (S.D. Ohio Jan 8, 2019). The issue of whether "superficial" is a vocationally relevant term with a fixed "qualitative" meaning and the continuing viability of

VI.    **CONCLUSION**

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED,** and that the Commissioner's decision be **AFFIRMED.**

VII.   **PROCEDURE ON OBJECTIONS**

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and forfeiture of the right to appeal the judgment of the District Court.  Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's

---

the analysis employed in *Lindsey* recently was addressed at significant length by another Magistrate Judge of this Court.  *Stephen D. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00746, 2023 WL 4991918 (S.D. Ohio Aug. 4, 2023).  That decision, analyzing cases both within and outside this Circuit, rejected the persuasiveness of *Lindsey* given "the fact that no controlling authority provides any vocational definition of 'superficial' work-place interactions."  *Id.*, at *14. The Magistrate Judge then proceeded to find "no error in the ALJ's rejection of the non-reviewing psychologist narrative phrase 'interact superficially' as vocationally vague."  *Id.*

report, which fails to specify the issues of contention, does not suffice to preserve an issue for

appeal . . . .") (citation omitted)).


Date:       <u>**October 6, 2023**</u>                            <u>/s/ *Elizabeth A. Preston Deavers*</u>
                                                        **Elizabeth A. Preston Deavers**
                                                        **United States Magistrate Judge**